ORIGINAL FILED

2013 AUG 12 P 2: 45

RICHARD W. WIEKING
CLERK, U.S DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED BY FAX

1   LIONEL Z. GLANCY (#134180)
    lglancy@glancylaw.com
2   MICHAEL GOLDBERG (#188669)
    mmgoldberg@glancylaw.com
3   ROBERT V. PRONGAY (#270796)
    rprongay@glancylaw.com
4   **GLANCY BINKOW & GOLDBERG LLP**
    1925 Century Park East, Suite 2100
5   Los Angeles, CA 90067
    Telephone: (310) 201-9150
6   Facsimile: (310) 201-9160

7   **POMERANTZ GROSSMAN HUFFORD**
8   **DAHSLTROM & GROSS LLP**
    Jeremy A. Lieberman
9   Leslie F. Portnoy
    600 Third Avenue, 20th Floor
10  New York, New York 10016
    Telephone: (212) 661-1100
11  Facsimile: (212) 661-8665
    Email: jalieberman@pomlaw.com

12
    *Attorneys for Plaintiff*
13
    *[Additional Counsel on signature page]*
14
                    **UNITED STATES DISTRICT COURT**
15                  **NORTHERN DISTRICT OF CALIFORNIA**

16
17  WARREN AVERY, Individually and on Behalf   )   Case No.
    of All Other Persons Similarly Situated,    )
18                                               )   **CLASS ACTION**
                    Plaintiff,                   )
19                                               )   **COMPLAINT FOR VIOLATIONS**
                                                 )   **OF THE FEDERAL SECURITIES**
20              v.                               )   **LAWS**
                                                 )
21  JUNIPER NETWORKS, INC., KEVIN R.            )
    JOHNSON, PRADEEP S. SINDHU, ROBYN           )   **JURY TRIAL DEMANDED**
22  M. DENHOLM, and GENE ZAMISKA,               )
                                                 )
23                  Defendants.                  )
                                                 )
24                                               )
                                                 )
25

26
27
28
                COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

CV 13 3733

WHO



**CLASS ACTION COMPLAINT**

1.     Plaintiff Warren Avery ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Juniper Networks, Inc. ("Juniper" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

2.     This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased Juniper securities between April 24, 2012 and August 8, 2013, inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 against the Company and certain of its top officials.

3.     Juniper provides Internet infrastructure solutions for Internet service providers and other telecommunications service providers.  The Company offers network infrastructure solutions that include IP routing, Ethernet switching, security and application acceleration solutions.

4.     The Company conducts business in over 100 countries around the globe, and generated over half of its revenue in fiscal year 2012 outside the United States.

5.     The Company purports to have a strict policy against corruption and bribery, and to that end has published on its website a code of conduct that explicitly prohibits bribery and corruption. The

Company also purports to exercise control over its employees through effective internal controls, whereby the Company's assets are utilized in comport with the Company's policies and for the benefit of the Company.

6. On August 8, 2013, after the market closed, the Company disclosed that the SEC and the U.S. Department of Justice, "are conducting investigations into possible violations by the Company of the U.S. Foreign Corrupt Practices Act."

7. On this news, Juniper securities declined $1.24 per share or more than 5%, to close at $20.92 per share on August 9, 2013.

8. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company was in violation of the U.S. Foreign Corrupt Practices Act ("FCPA"); (2) the Company lacked effective internal controls over financial reporting; and, (3) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

12. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b) as the Company is headquartered in this District.

13.    In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14.    Plaintiff, as set forth in the attached certification, purchased Juniper securities at artificially inflated prices during the Class Period and has been damaged upon the revelation of the alleged corrective disclosure.

15.    Defendant Juniper is a Delaware corporation with its headquarters located at 1194 North Mathilda Avenue, Sunnyvale, CA 94089.   The common stock is traded on the New York Stock Exchange ("NYSE") under the ticker symbol "JNPR."

16.    Defendant Kevin R. Johnson ("Johnson") has served as the Company's Chief Executive Officer throughout the Class Period.

17.    Defendant Pradeep S. Sindhu ("Sindhu") is the Company's Vice Chairman, Chief Technology Officer and Founder. Defendant Sindhu sold 300,000 shares of the Company's stock on August 2, 2013, less than a week before the FCPA investigation was announced, and also sold 52,500 Juniper shares over three trading sessions between January 30, 2013 through February 1, 2013.

18.    Defendant Robyn M. Denholm ("Denholm") has served as the Company's Executive Vice President and Chief Financial Officer throughout the Class Period.

19.    Defendant Gene Zamiska ("Zamiska") has served as the Company's Vice President, Finance throughout the Class Period.   Defendant Zamiska served as the Company's Corporate Controller through February 26, 2013.

20.    The defendants referenced above in ¶¶ 15 – 18 are sometimes referred to herein as the "Individual Defendants."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

3

## SUBSTANTIVE ALLEGATIONS

### Background

21.    Juniper designs, develops, and sells products and services that together provide its customers with a high-performance network infrastructure built on simplicity, security, openness, and scale. The Company serves the high-performance networking requirements of global service providers, enterprises, governments, and research and public sector organizations. The Company's core competencies are in hardware systems, silicon design, network architecture.

### Materially False and Misleading Statements Issued During the Class Period

22.    On April 24, 2012, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2012. For the quarter, the Company reported net income of $16.3 million, or $0.03 diluted earnings per share ("EPS") and total net revenues of $1 billion, compared to net income of $129.8 million or $0.24 diluted EPS and total net revenues of $1.1 billion for the same period a year ago.

23.    On May 9, 2012, the Company filed a quarterly report for the period ended March 31, 2012 on a Form 10-Q with the SEC signed by Defendants Denholm and Zamiska, which reiterated the Company's previously reported financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Johnson and Denholm stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

24.    On July 24, 2012, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2012. For the quarter, the Company reported net income of $57.7 million, or $0.11 diluted EPS and total net revenues of $1.1 billion, compared to net income of $115.6 million or $0.21 diluted EPS and total net revenues of $1.1 billion for the same period a year ago.

25.    On August 8, 2012, the Company filed a quarterly report for the period ended June 30, 2012 on a Form 10-Q with the SEC signed by Defendants Denholm and Zamiska, which reiterated the Company's previously reported financial results and financial position.  In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Johnson and Denholm stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

26.    On October 23, 2012, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2012.  For the quarter, the Company reported net income of $16.8 million, or $0.03 diluted EPS and total net revenues of $1.1 billion, compared to net income of $83.7 million or $0.16 diluted EPS and total net revenues of $1.1 billion for the same period a year ago.

27.    On November 8, 2012, the Company filed a quarterly report for the period ended September 30, 2012 on a Form 10-Q with the SEC signed by Defendants Denholm and Zamiska, which reiterated the Company's previously reported financial results and financial position.  In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Johnson and Denholm stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

28.    On January 24, 2013 the Company issued a press release announcing its financial results for the fourth quarter and fiscal year ended December 31, 2012.  For the quarter, the Company reported net income of $95.7 million, or $0.19 diluted EPS and total net revenues of $1.1 billion, compared to net income of $96.2 million or $0.18 diluted EPS and total net revenues of $1.1 billion for the same period a year ago.  For the year, the Company reported net income of $186.5 million, or $0.35 diluted EPS and total net revenues of $4.4 billion, compared to net income of $425.1 million or $0.79 diluted EPS and total net revenues of $4.4 billion for the same period a year ago.

29.     On February 26, 2013, the Company filed an annual report for the period ended December 31, 2012 on a Form 10-K with the SEC signed by, among others, Defendants Johnson, Denholm and Zamiska, which reiterated the Company's previously reported financial results and financial position.   In addition, the Form 10-K contained signed certifications pursuant to SOX by Defendants Johnson and Denholm stating that the financial information contained in the Form 10-K was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

30.     The Company reported in its annual report that it detected no material weaknesses in the Company's internal controls, stating:

> The management of Juniper Networks, Inc. (the "Company") is responsible for establishing and maintaining adequate internal control over financial reporting for the Company. The Company's internal control over financial reporting is a process designed under the supervision of the Company's principal executive and principal financial officers to provide reasonable assurance regarding the reliability of financial reporting and the preparation of the Company's financial statements for external purposes in accordance with U.S. generally accepted accounting principles.
>
> The Company's internal control over financial reporting includes those policies and procedures that: (i) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Company; (ii) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with U.S. generally accepted accounting principles, and that receipts and expenditures of the Company are being made only in accordance with authorizations of management and directors of the Company; and (iii) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of the Company's assets that could have a material effect on the Consolidated Financial Statements.
>
> Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.
>
> Management assessed the effectiveness of the Company's internal control over financial reporting as of December 31, 2012, based on the framework set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in Internal Control - Integrated Framework. Based on that assessment,

management concluded that, as of December 31, 2012, the Company's internal control over financial reporting was effective.

31.    On April 23, 2013, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2013.  For the quarter, the Company reported net income of $91 million, or $0.18 diluted EPS and total net revenues of $1.1 billion, compared to net income of $16.3 million or $0.03 diluted EPS and total net revenues of $1.0 billion for the same period a year ago.

32.    On May 8, 2013, the Company filed with the SEC a quarterly report for the period ended March 31, 2013 on a Form 10-Q, which was signed by Defendant Denholm and reiterated the Company's previously reported financial results and financial position.  In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Johnson and Denholm stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

33.    On July 23, 2013, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2013.  For the quarter, the Company reported net income of $97.9 million, or $0.19 diluted EPS and total net revenues of $1.2 billion, compared to net income of $57.7 million or $0.11 diluted EPS and total net revenues of $1.1 billion for the same period a year ago.

34.    In February, 2013, the Company published on its website an amended code of conduct entitled "Worldwide Code of Business Conduct and Ethics," (the, "Code") with an introduction signed by Defendant Johnson. Defendant Johnson states in his introduction:

> The Code is an extension of Juniper's values and the foundation for our business beliefs. At Juniper, the great task of delivering a new network for the next decade is built on the creativity and commitment of our people. *The Code reflects our commitment to ethical business practices and regulatory compliance and provides information and resources to help you make good, informed business decisions and to act on them with integrity*.
>
> Every day we interact with a variety of individuals and groups -- including our customers, partners, competitors, suppliers, colleagues, shareholders, vendors, government and regulatory agencies, and our communities. We at Juniper are committed to interacting with all of these audiences in an ethical manner and in accordance with our Juniper values.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

7

*Compliance with our legal and ethical obligations is the responsibility of every employee, officer and director of Juniper.* Violations can result in great harm to Juniper and can also result in disciplinary action up to and including termination and personal liability for you.

(Emphasis added.)

35.   The Code provides specific guidance regarding the requirements of the FCPA, stating:

Juniper doesn't want bribery or corruption in any of our business practices. No potential benefit can justify hurting our integrity and reputation or the trust others place in us.

All employees must fully comply with the Foreign Corrupt Practices Act (FCPA) and other applicable laws prohibiting the bribing of public officials or individuals in the private sector (such as the U.K. Bribery Act of 2010). All transactions, including expense reimbursement, must be accurate and true and not disguise the real purpose of any discount, expense, etc.

These laws and Juniper's FCPA and Anti-Corruption Policy prohibit making, giving or promising to give, anything of value to "foreign officials" or private individuals in order to obtain or retain business or to gain an improper advantage. We can't do these things directly or indirectly through a partner or other third party.

Companies with Government-Related Owners. If you believe that a company Juniper is doing business with, or wishes to do business with, has a government official or government employee as a significant owner, contact Legal immediately.

Gifts, Entertainment and Travel for Third Parties. The issue of potential corruption often comes up when travel, gifts and entertainment are being given to a third party. Juniper has strict guidelines on this topic that can be found in Juniper's Gifts, Entertainment and Third Party Travel Policy. ALL REQUESTS FOR THIRD PARTY TRAVEL FOR GOVERNMENT EMPLOYEES AND AFFILIATES MUST SUBMITTED FOR PROPER APPROVAL.

36.   The statements referenced in ¶¶ 21 - 34 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: (1) the Company was violation of the U.S. Foreign Corrupt Practices Act ("FCPA"); (2) the Company's reported revenues were derived in part from violations of the FCPA; (3) the Company lacked effective internal controls over financial

1   reporting; and (4) as a result of the foregoing, the Company's statements were materially false and

2   misleading at all relevant times.

### THE TRUTH EMERGES

3

4   37.     On August 8, 2013, after the market closed, the Company filed a quarterly report for the

5   period ended June 30, 2013, which revealed an investigation into possible violations of the FCPA by

6   the SEC and U.S. Department of Justice.  The Form 10-Q disclosed, in relevant part:

7

8          The U.S. Securities and Exchange Commission and the U.S. Department of
           Justice are conducting investigations into possible violations by the Company of
9          the U.S. Foreign Corrupt Practices Act. The Company is cooperating with these
           agencies regarding these matters. The Company is unable to predict the duration,
10         scope or outcome of these investigations.

11  38.     On this news, Juniper securities declined $1.24 per share or more than 5%, to close at

12  $20.92 per share on August 9, 2013.

13

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

14

15  39.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure

16  23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired

17  Juniper securities during the Class Period (the "Class"); and were damaged thereby.  Excluded from the

18  Class are defendants herein, the officers and directors of the Company, at all relevant times, members

19  of their immediate families and their legal representatives, heirs, successors or assigns and any entity in

20  which defendants have or had a controlling interest.

21

22  40.     The members of the Class are so numerous that joinder of all members is impracticable.

23  Throughout the Class Period, Juniper securities were actively traded on the NYSE.  While the exact

24  number of Class members is unknown to Plaintiff at this time and can be ascertained only through

25  appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the

26  proposed Class.   Record owners and other members of the Class may be identified from records

27  maintained by Juniper or its transfer agent and may be notified of the pendency of this action by mail,

28  using the form of notice similar to that customarily used in securities class actions.

41.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

42.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

43.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Juniper;

- whether the Individual Defendants caused Juniper to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Juniper securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

45.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Juniper securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Juniper securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

46.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

47.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
11

order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Juniper securities; and (iii) cause Plaintiff and other members of the Class to purchase Juniper securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

50. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Juniper securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Juniper's finances and business prospects.

51. By virtue of their positions at Juniper, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

52.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Juniper, the Individual Defendants had knowledge of the details of Juniper's internal affairs.

53.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Juniper. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Juniper's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Juniper securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Juniper's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased Juniper securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

54.     During the Class Period, Juniper securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of Juniper securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said securities, or would not have purchased them at the inflated prices that were paid. At the time of the purchases by Plaintiff and the Class, the true value of Juniper securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Juniper securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

55.    By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

56.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

57.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58.    During the Class Period, the Individual Defendants participated in the operation and management of Juniper, and conducted and participated, directly and indirectly, in the conduct of Juniper's business affairs.   Because of their senior positions, they knew the adverse non-public information regarding Juniper's FCPA violations.

59.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Juniper's financial condition and results of operations, and to correct promptly any public statements issued by Juniper which had become materially false or misleading.

60.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Juniper disseminated in the marketplace during the Class Period concerning Juniper's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Juniper to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Juniper within the meaning of Section 20(a) of the

Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Juniper securities.

61.    Each of the Individual Defendants, therefore, acted as a controlling person of Juniper. By reason of their senior management positions and/or being directors of Juniper, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Juniper to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Juniper and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

62.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Juniper.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
15

1

## DEMAND FOR TRIAL BY JURY

2

Plaintiff hereby demands a trial by jury.

3

Dated:   August 12, 2013                    **GLANCY BINKOW & GOLDBERG LLP**

4

5          By: _____
           Lionel Z. Glancy

6          Michael Goldberg
           Robert V. Prongay

7          1925 Century Park East, Suite 2100
           Los Angeles, CA 90067

8          Telephone: (310) 201-9150
           Facsimile: (310) 201-9160

9          Email: info@glancylaw.com

10         **POMERANTZ GROSSMAN HUFFORD**
           **DAHSLTROM & GROSS LLP**

11         Jeremy A. Lieberman
           Lesley F. Portnoy

12         600 Third Avenue, 20th Floor
           New York, New York 10016

13         Telephone:    (212) 661-1100
           Facsimile:    (212) 661-8665

14         Email: jalieberman@pomlaw.com

15         **POMERANTZ GROSSMAN HUFFORD**
           **DAHSLTROM & GROSS LLP**

16         Patrick V. Dahlstrom
           Ten South La Salle Street, Suite 3505

17         Chicago, Illinois 60603
           Telephone:    (312) 377-1181

18         Facsimile:    (312) 377-1184
           Email: pdahlstrom@pomlaw.com

19

20         ***Attorneys for Plaintiff***

21

22

23

24

25

26

27

28

**CERTIFICATION PURSUANT**
**TO FEDERAL SECURITIES LAWS**

1.   I,   _WARREN AVERY_   , make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Juniper Network, Inc. ("Juniper Network" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Juniper Network securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Juniper Network securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Juniper Network securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

Executed _____8/9/2013_____
         (Date)

_____
(Signature)

_____WARREN AVERY_____
(Type or Print Name)

<u>SUMMARY OF PURCHASES AND SALES</u>

| DATE | PURCHASE OR SALE | NUMBER OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| 8/1/2013 | PURCHASE | 2000 | 21.80 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |